[Cite as *State v. Williams*, 2017-Ohio-4455.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO,[1] | : | |
| Plaintiff-Appellant, | : | Case No. 17CA8 |
| v. | : | DECISION AND JUDGMENT ENTRY |
| RANDY D. WILLIAMS, | : | |
| Defendant-Appellee. | : | RELEASED 06/16/2017 |

Paul G. Bertram, III, City of Marietta Law Director, and Daniel Everson, City of Marietta Assistant Law Director, Marietta, Ohio, for appellant.

April F. Campbell, Campbell Law, LLC, Dublin, Ohio, for appellee.

Hoover, J.

{¶1}     Plaintiff-appellant, the State of Ohio ("State"), appeals a judgment of the Marietta Municipal Court that granted a motion to suppress evidence filed by defendant-appellee, Randy D. Williams ("Williams"). The State raises seven assignments of error; but we find the sixth assignment of error to be dispositive.

{¶2}     In its sixth assignment of error, the State argues that the trial court incorrectly suppressed the results of Williams's BAC DataMaster test. The State contends that the trial court erred in finding that the law enforcement officer who administered Williams's test lacked a valid permit to operate the machine. The State further claims that the trial court wrongly construed the Ohio Director of Health ("ODH") regulations to mean that a BAC DataMaster senior operator

---

[1] We observe that the notice of appeal lists the plaintiff-appellant as the "City of Marietta." However, the trial court's decision lists the plaintiff-appellant as the "State of Ohio." For consistency, we use the same designation as the trial court.

permit holder must complete a proficiency examination that includes accepting "subject samples" in order for a renewal to be valid. We agree with the State. A plain reading of the regulations fails to support the trial court's conclusion. Instead, the regulations clearly outline the qualifications for renewal and do not require a BAC DataMaster senior operator permit holder seeking renewal to complete a proficiency examination before the renewal becomes valid. *See* Ohio Adm.Code 3701-53-09(F) and 3701-53-07(D). The regulation regarding proficiency examinations for BAC DataMaster senior operator permit holders states that the proficiency examinations are conducted "at the director's discretion," and not that they are required in order to obtain a renewal. Ohio Adm.Code 3701-53-08(C).

{¶3}     Accordingly, we sustain the State's sixth assignment of error; and we find the other assignments of error to be moot. We reverse the trial court's decision granting Williams's motion to suppress the results of his breath test, and remand for further proceedings.

### I.  Facts and Procedural History

{¶4}     On September 2, 2016, Ohio State Highway Patrol Sergeant Eric Knowlton responded to the scene of a motor vehicle collision involving the vehicle Williams had been operating. During the encounter, Sergeant Knowlton detected an odor of an alcoholic beverage emanating from Williams's breath. Williams admitted that he had consumed some alcoholic beverages. Sergeant Knowlton administered field sobriety tests and subsequently arrested Williams.

{¶5}     The sergeant transported Williams to the Belpre Police station where he administered a BAC DataMaster test. Williams registered a .135 breath-alcohol content. Sergeant Knowlton charged Williams with operating a motor vehicle while under the influence of alcohol,

in violation of R.C. 4511.19(A)(1)(a) and (d), as well as traveling left of center, in violation of R.C. 4511.25. Williams later entered a not guilty plea.

{¶6}     On October 7, 2016, Williams filed a motion to suppress, inter alia, the results of his breath-alcohol test. Williams raised twenty-two grounds in support of his motion, but he later narrowed it down to the following two issues:

[1] The individual administering the breath test did not complete a proficiency examination in the past calendar year as is required under 3701-53-08(D).

[2] The individual administering the breath test did not present evidence satisfactory to the director that he or she continues to meet the qualifications established by the applicable provisions of rules 3701-53-07 and 3701-53-08 of the OAC for issuance of the operator access card sought as is required by 3701-53-09(E).

{¶7}     In its response, the State asserted that Williams's two identified issues are not relevant. The State argued that the two issues cite the regulations applicable to operator access cards, which are required to administer tests using the Intoxilyzer 8000, but are not required to administer tests using the BAC DataMaster. The State noted that Williams's case did not involve the Intoxilyzer 8000, but instead, involved the BAC DataMaster. The State thus claimed that the two issues are completely irrelevant in Williams's case.

{¶8}     On November 21, 2016, the trial court held a hearing on the motion to suppress. The parties initially clarified that the case did not involve the Intoxilyzer 8000. The trial court advised the parties that it would consider the State's argument that the provisions Williams cited are inapplicable to the BAC DataMaster and that if it did consider Williams's argument, it would consider whether the officers met "the qualifications or did have proficiency exams." The State

indicated that it intended "to provide evidence of certification, sufficient to operate the BAC DataMaster, not the I-8000."

{¶9}    The State questioned Sergeant Knowlton about his qualifications to administer the BAC DataMaster test. Sergeant Knowlton explained that he is licensed as a BAC DataMaster senior operator and holds a senior operator's permit issued by the Ohio Department of Health. He testified that he is a high school graduate and a certified law enforcement officer. He additionally stated that he successfully completed a senior operator upgrade or conversion training course for the BAC DataMaster, as well as a proficiency examination in breath testing within the year prior to September 2, 2016.

{¶10}   During cross-examination, Knowlton stated that he has held a senior operator permit since early 2005. He further explained the proficiency examination that he completed. He testified that ODH representatives are present during the test and that they collect the results after the test is complete. Knowlton stated that his examination involved both a written test and a simulated breath-alcohol content test using a sample containing a known alcohol content. Knowlton indicated that he did not use any "subject samples" (i.e., samples received from individuals) during his proficiency testing.

{¶11}   Belpre Police Sergeant Tyler Heddleston testified that he holds a senior operator permit from the Ohio Department of Health. He explained that he checked the BAC DataMaster during the week of Williams's test and found it to be in proper working order. Sergeant Heddleston further stated that he is a high school graduate and a certified law enforcement officer. He additionally indicated that he successfully completed a senior operator upgrade or conversion training course for the BAC DataMaster, as well as a proficiency examination in breath testing.

{¶12}   On cross-examination, Sergeant Heddleston explained his proficiency examination consisted of a written test and a practical test during which he had to demonstrate that he knew how to use the BAC DataMaster. He stated that during the practical part of the test, he used "a subject test" and not a known solution. Sergeant Heddleston testified that he obtains a "subject test" by either blowing into the machine or requesting another individual to blow into the machine.

{¶13}   On February 21, 2017, the trial court granted Williams's motion to suppress. The court found that both Sergeants Knowlton and Heddleston hold senior operator permits and that both passed their proficiency examinations. However, the court pointed out that they did not complete the practical portion of the proficiency test in the same manner. The court noted that Sergeant Knowlton used a known alcohol sample, while Sergeant Heddleston used a live subject sample.

{¶14}   The court classified the question before it as "whether the Court accepts Sgt. Knowlton's renewal permit as a Senior Operator as valid despite the fact that Defendant questioned compliance with the requirement for a proficiency exam." The court found that the two sergeants "testified to different procedures for demonstrating practical competency during the proficiency testing." The court found that the procedure Sergeant Knowlton described "appears to be the instrument check described in OAC 3701-54-04" and that what Sergeant "Heddleston describe[d] is closer to a subject sample." The court found "merits in both approaches to practical competency testing as well as potential shortcomings." The court stated that the State did not produce any "evidence that either identified procedure for practical testing is acceptable to the director of health." The court thus determined that the State failed to establish that Sergeant Knowlton's proficiency test substantially complied with Ohio Adm. Code

3701-53-08(E), which requires applicants to accept samples, and with 3701-53-08(C)(2), which states that a proficiency exam shall consist of an evaluation of the permit holder's ability to test samples using the evidential breath testing instrument for which the permit is held. The court believed that the difference in practical testing procedures was "beyond de minimis." The court granted Williams's motion to suppress the results of his breath test. It is from this decision that the State appeals.

## II. Assignments of Error

{¶15} The State raises seven assignments of error.

First Assignment of Error:

> Whether the trial court erred in ruling that Defendant-Appellee's citation to rules concerning renewal of Operator Access Cards for the Intoxilyzer 8000 placed into issue the legal basis for decision concerning a Senior Operator Permit for the BAC Datamaster.

Second Assignment of Error:

> Whether the trial court erred in deciding the case on the basis of legal issues as to which fair notice was not given.

Third Assignment of Error:

> Whether the trial court erred, in view of the trial court's findings of fact, in implicitly finding that suppression theories 21 and 22 were relevant to the case.

Fourth Assignment of Error:

> Whether the trial court erred in holding that Defendant-Appellee's motion to suppress and supporting memorandum were sufficiently specific to raise the City's burden of proof from "fairly slight" to a specific burden requiring particularized testimony.

Fifth Assignment of Error:

> Whether the trial court erred in suggesting that Defendant-Appellee raised the City's burden through cross-examination.

Sixth Assignment of Error:

> Whether the trial court erred in ruling that Plaintiff-Appellant's evidence failed to satisfy Plaintiff-Appellant's burden under R.C. 4511.19(D)(1)(b).

Seventh Assignment of Error:

> Whether the trial court erred by denying due deference to the Department of Health's power to interpret its own regulations in the issuance and renewal of permits.

### III.  Law and Analysis

{¶16}   Although the State presents seven assignments of error, we find the sixth dispositive. In its sixth assignment of error, the State argues that the trial court erred as a matter of law by suppressing Williams's BAC DataMaster test results. Specifically, the State asserts that the trial court incorrectly determined that Sergeant Knowlton did not hold a valid permit at the time he administered the BAC DataMaster test to Williams.

### A.  Standard of Review

{¶17}   Appellate review of a trial court's ruling on a motion to suppress is "a mixed question of law and fact." *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of the witnesses. *State v. Roberts,* 110 Ohio St.3d 71, 2006–Ohio–3665, 850 N.E.2d 1168, ¶ 100, citing *State v. Mills,* 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). Consequently, in its review, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Belton*, --- Ohio St.3d ---, 2016-Ohio-1581, --- N.E.3d ---, ¶ 100; *State v. Landrum,* 137 Ohio App.3d 718, 722, 739 N.E.2d 1159 (4th Dist.2000). However,

an appellate court determines as a matter of law, without deferring to the trial court's conclusions, whether the trial court reached the correct legal conclusion in analyzing the facts of the case. *Belton* at ¶ 100; *Roberts* at ¶ 100; *Burnside* at ¶ 8.

## B. Alcohol Test Challenges

{¶18} A defendant who wants to challenge the validity of an alcohol test result must first file a motion to suppress. *State v. Baker,* 146 Ohio St.3d 456, 2016-Ohio-451, 58 N.E.3d 1114, ¶ 23; *Burnside* at ¶ 24. If the defendant challenges the validity of an alcohol test, the State bears the burden to establish that the testing procedures substantially complied with the applicable ODH regulations. *Baker* at ¶ 23; *Burnside* at ¶ 24. The substantial compliance standard is limited "to excusing only errors that are clearly de minimis," *i.e.,* irregularities amounting to " 'minor procedural deviations.' " *Burnside* at ¶ 34, quoting *State v. Homan,* 89 Ohio St.3d 421, 426, 732 N.E.2d 952 (2000). Once the State shows substantial compliance with the regulations, the test result is presumptively admissible. *Baker* at ¶ 23; *Burnside* at ¶ 24. The burden then shifts to the defendant to show prejudice resulting from "anything less than strict compliance." *Burnside* at ¶ 24. Prejudice, in this context, means "that the failure to strictly comply may have caused an unreliable test result that does not properly measure alcohol content in the specimen." *Baker* at ¶ 27.

## C. Alcohol Test Admissibility

{¶19} R.C. 4511.19(D)(1)(b) states that evidence regarding the concentration of alcohol in an individual's breath may be admitted into evidence at trial if it has been "analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code." Thus, R.C. 4511.19(D)(1)(b) sets forth two basic statutory requirements for evidence regarding the

concentration of alcohol in a defendant's breath to be admissible: (1) the ODH has approved the testing method; and (2) the individual who analyzed the concentration possesses a valid permit that the ODH issued under R.C. 3701.143. *State v. Moore*, 2013-Ohio-5506, 5 N.E.3d 41, ¶ 12 (4th Dist.).

{¶20} Our focus in the case at bar is whether the trial court properly concluded that (1) Sergeant Knowlton lacked a valid permit that the ODH issued under R.C. 3701.143, and (2) that Williams's breath test result is inadmissible under R.C. 4511.19(D)(1)(b). The court found that the sergeant lacked a valid permit, because his proficiency examination did not comply with the Ohio Adm.Code 3701-53-08(E) requirement to accept "samples." The court determined that the sergeant's proficiency examination did not comply with the requirement to accept "samples," because he used a known solution, rather than a sample from an individual. The court then concluded that because the sergeant's proficiency examination did not comply with the Ohio Adm.Code 3701-53-08(E) requirement to accept "samples," the renewal of his BAC DataMaster senior operator's permit was invalid. The court therefore determined that Sergeant Knowlton did not possess a valid permit, and that his lack of a valid permit rendered Williams's BAC DataMaster test result inadmissible under R.C. 4511.19(B)(1)(b).

{¶21} The State argues that the trial court erred by determining that Sergeant Knowlton lacked a valid permit. The State contends that it presented unrefuted evidence that Sergeant Knowlton possesses a valid permit. The State introduced into evidence a written certificate issued by the ODH that licenses Sergeant Knowlton to perform tests using the BAC DataMaster. The State asserts that this evidence, by itself, demonstrates that Sergeant Knowlton's permit is valid.

{¶22}  Accordingly, our review centers upon whether the trial court correctly interpreted R.C. 4511.19(B)(1)(b) and the ODH regulations to mean that a BAC DataMaster senior operator permit holder must complete a proficiency examination that includes accepting "subject samples" in order for a renewal permit issued by the ODH to be valid.

### D.  Statutory and Regulatory Interpretation

{¶23}  Courts interpret administrative rules in the same manner as statutes. *McFee v. Nursing Care Mgt. of Am., Inc.,* 126 Ohio St.3d 183, 2010-Ohio-2744, 931 N.E.2d 1069, ¶ 27, citing *State ex rel. Brilliant Elec. Sign Co. v. Indus. Comm.,* 57 Ohio St.2d 51, 54, 386 N.E.2d 1107 (1979) (stating that the "ordinary meaning rule" of statutory construction applies equally to administrative rules). The correct interpretation of statutes and administrative rules presents a question of law that we review independently and without deference to the trial court. *E.g., State v. Vanzandt*, 142 Ohio St.3d 223, 2015-Ohio-236, 28 N.E.3d 1267, ¶ 6; *State v. Bundy,* 2012-Ohio-3934, 974 N.E.2d 139, ¶ 46 (4th Dist.); *see also Hudson v. Petrosurance, Inc.,* 127 Ohio St.3d 54, 2010–Ohio–4505, 936 N.E.2d 481, ¶ 29, citing *MCI Telecommunications Corp. v. Pub. Util. Comm.,* 38 Ohio St.3d 266, 268, 527 N.E.2d 777 (1988) (stating that appellate courts have "complete and independent power of review as to all questions of law").

{¶24}  " 'It is a cardinal rule of statutory construction that where the terms of a statute are clear and unambiguous, the statute should be applied without interpretation.' " *Wilson v. Lawrence*, --- Ohio St.3d ---, 2017-Ohio-1410, --- N.E.3d ---, ¶ 11, quoting *Wingate v. Hordge,* 60 Ohio St.2d 55, 58, 396 N.E.2d 770 (1979), citing *Provident Bank v. Wood,* 36 Ohio St.2d 101, 304 N.E.2d 378 (1973). Accordingly, a court's first step when considering the meaning of an administrative rule (or statute) "is always to determine whether the [rule or] statute is 'plain and unambiguous.' " *Jacobson v. Kaforey*, — Ohio St.3d —, 2016-Ohio-8434,

— N.E.3d —, ¶ 8, quoting *State v. Hurd,* 89 Ohio St.3d 616, 618, 734 N.E.2d 365 (2000); *see also State ex rel. Cordray v. Midway Motor Sales, Inc.,* 122 Ohio St.3d 234, 2009-Ohio-2610, 910 N.E.2d 432, ¶ 15, quoting *Slingluff v. Weaver,* 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus (stating that if words used in statute or administrative rule " 'be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation' "). If the language is plain and unambiguous, courts must apply it as written. *Wilson* at ¶ 11, quoting *State v. Hairston,* 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, ¶ 13 (" 'If [the statute or rule] is not ambiguous, then we need not interpret it; we must simply apply it.' ").  When the language used in a statute or rule " 'is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the [legislative body or rule-making authority] has said.' " *Id.*, quoting *Jones v. Action Coupling & Equip., Inc.,* 98 Ohio St.3d 330, 2003-Ohio-1099, 784 N.E.2d 1172, ¶ 12, citing *Symmes Twp. Bd. of Trustees v. Smyth,* 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000). Additionally, courts must "give effect only to the words the legislature used, making neither additions to, nor deletions from, the statutory language." *Id.*, citing *Columbia Gas Transm. Corp. v. Levin,* 117 Ohio St.3d 122, 2008-Ohio-511, 882 N.E.2d 400, ¶ 19. Furthermore, " '[t]he interpretation of statutes and administrative rules should follow the principle that neither is to be construed in any way other than as the words demand.' " *State ex rel. Baroni v. Colletti,* 130 Ohio St.3d 208, 2011-Ohio-5351, 957 N.E.2d 13, ¶ 18, quoting *Morning View Care Ctr.–Fulton v. Ohio Dept. of Human Servs.,* 148 Ohio App.3d 518, 2002-Ohio-2878, 774 N.E.2d 300, ¶ 36 (10th Dist.).

{¶25}  Thus, when interpreting an administrative rule, courts first look to the text of the rule, "reading words and phrases in context and construing them according to the rules of

grammar and common usage." *State ex rel. Steele v. Morrissey,* 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 21. However, when a legislative or administrative "definition is available, we construe the words of the statute [or rule] accordingly." *State v. Gonzales*, --Ohio St.3d--, 2017-Ohio-777, --N.E.3d--, ¶ 4, citing R.C. 1.42.

{¶26}   A statute or rule is ambiguous when the language "is 'capable of bearing more than one meaning.' " *Jacobson* at ¶ 8, quoting *Dunbar v. State,* 136 Ohio St.3d 181, 2013-Ohio-2163, 992 N.E.2d 1111, ¶ 16. A court that is reviewing a statute or administrative rule for ambiguity should direct its " 'attention * * * beyond single phrases, and * * * should consider, in proper context, all words used by the [rule-making body] in drafting [the regulation] with a view to its place in the overall [regulatory] scheme.' " *Gonzales* at ¶ 5, quoting *D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health*, 96 Ohio St.3d 250, 2002-Ohio-4172, 773 N.E.2d 536, ¶ 19. "Without 'an initial finding' of ambiguity, 'inquiry into legislative intent, legislative history, public policy, the consequences of an interpretation, or any other factors identified in R.C. 1.49 is inappropriate.' " *Jacobson* at ¶ 8, quoting *Dunbar* at ¶16.

{¶27}   Moreover, related provisions must be read in *pari materia. Midway Motor Sales, supra,* at ¶ 25, citing *Maxfield v. Brooks,* 110 Ohio St. 566, 144 N.E. 725 (1924), paragraph two of the syllabus. In reading statutes and administrative rules in *pari materia,* "court[s] must give a reasonable construction that provides the proper effect to each * * *." *Id.* "All provisions * * * bearing upon the same subject matter should be construed harmoniously unless they are irreconcilable." *Id.,* citing *Couts v. Rose,* 152 Ohio St. 458, 461, 90 N.E.2d 139 (1950).

{¶28}   In the case at bar, therefore, we first review the language contained in the applicable statutes and administrative rules to ascertain whether they plainly and unambiguously

describe the requisites of a "valid permit" to administer a BAC DataMaster test. If so, we must

apply them as written.

### E. Valid Permit

{¶29}   Neither R.C. 4511.19(D)(1)(b) nor R.C. 3701.143 defines "valid permit." Black's

Law Dictionary (7th Ed.1999) defines "valid" as follows: "Legally sufficient; binding  * * * *

Meritorious". *Id.* at 1548; *see also State ex rel. Hayburn v. Kiefer*, 68 Ohio St.3d 132, 133, 624

N.E.2d 699 (1993), quoting Webster's New World Dictionary 1568 (2 College Ed.1982)

(defining "valid" to mean " 'having legal force' "). Black's Law Dictionary defines a "permit" as

follows: "A certificate evidencing permission; a license". *Id.* at 1160.

{¶30}   A "valid permit" thus generally means a document of legal efficacy or force,

executed with proper legal authority and formalities that grants a person the right do something.

Within the context of R.C. 4511.19(D)(1)(b), a "valid permit" must be issued in accordance with

R.C. 3701.143. R.C. 3701.143 requires the ODH to (1) "approve satisfactory techniques or

methods" for chemically analyzing a person's whole blood, blood serum or plasma, urine,

breath, or other bodily substance in order to ascertain the amount of alcohol in the person's

whole blood, blood serum or plasma, urine, breath, or other bodily substance, (2) "ascertain the

qualifications of individuals to conduct such analyses," and (3) "issue permits to qualified

persons authorizing them to perform such analyses." Thus, under R.C. 4511.19(D)(1)(b), a "valid

permit" appears to mean a legally efficacious document that the ODH executed that grants a

qualified person, as determined by the ODH, the right to chemically analyze a person's whole

blood, blood serum or plasma, urine, breath, or other bodily substance in order to ascertain the

amount of alcohol in the person's whole blood, blood serum or plasma, urine, breath, or other

bodily substance.

{¶31} In the case at bar, the record unquestionably shows that Sergeant Knowlton possessed a permit, *i.e.*, a document that granted him the right to perform BAC DataMaster tests. The state introduced a document issued by the Ohio Department of Health with an effective date of April 29, 2016, and an expiration date of April 29, 2017. The document grants Sergeant Knowlton the right to administer breath tests using the BAC DataMaster. The document is entitled, "Alcohol and Drug Testing," and states that the document's purpose is "to certify that [Sergeant] Knowlton has qualified for and is hereby issued Senior Operator permit number * * * under the provisions of section 3701.143 of the Ohio Revised Code and chapter 3701-53-01 through 10 of the Ohio Administrative Code and is authorized to perform breath tests in accordance with such laws and rules, using the BAC DataMaster instrument." The document is signed by the director of health. Consequently, the evidence is clear that Sergeant Knowlton possessed a "permit" at the time he administered Williams's breath test.

{¶32} The next question concerns whether Sergeant Knowlton's permit was "valid" at the time he administered Williams's breath test. Thus, we must examine whether Sergeant Knowlton's permit had legal efficacy or force and was issued with the appropriate legal authority and formalities.

{¶33} Sergeant Knowlton's permit contains language indicating that it had legal efficacy or force and was issued with the appropriate legal authority. The permit states that Sergeant Knowlton "qualified for" the BAC DataMaster senior operator's permit; that he was issued the permit under the authority of R.C. 3701.143 and chapter 3701-53-01 through 10 of the Ohio Administrative Code; and that he is authorized to perform breath tests using the BAC DataMaster. The words grant Sergeant Knowlton the right to perform breath tests and show that the permit was issued in accordance with the appropriate legal authority and formalities.

{¶34} Despite the apparent clarity and validity of Sergeant Knowlton's permit, the trial court determined that it was invalid because the sergeant did not accept subject samples during his proficiency examination. We find it questionable whether a trial court may invalidate a permit that the director of health issued based upon the court's belief that the permit holder failed to meet the qualifications set forth in the regulations. *See* Katz, *Ohio Arrest, Search & Seizure*, Regulation of breath-testing equipment (June 2016 Update), Section 18:19 (footnote omitted) (stating that "[t]he state need not introduce any additional evidence of proficiency in breathtesting instruments outside of their valid permit or access card"); *State v. Dukes*, 2015-Ohio-676, 29 N.E.3d 299, ¶ 51 (8th Dist.) (concluding that evidence that laboratory held permit issued by the ODH necessarily established that laboratory complied with proficiency examination requirements). As our subsequent discussion explains, the regulations indicate that the ODH determines whether an individual possess the requisite qualifications to obtain a BAC DataMaster senior operator's permit. Thus, if the ODH issues a senior operator permit to an individual, the ODH necessary determined that the individual possesses the requisite qualifications. *See* R.C. 3701.143 (stating that the ODH shall issue permits to qualified persons). For a court to question the ODH's determination that an individual qualifies for a senior operator's permit—whether upon initial issuance or renewal—seems to usurp the authority the General Assembly has entrusted to the ODH to determine the means and methods of analyzing alcohol content in an individual. *See Burnside*, *supra*, at ¶ 32 (emphasis sic.) ("Indeed, the General Assembly instructed the Director of Health—and *not* the judiciary—to ensure the reliability of alcohol-test results by promulgating regulations precisely because the former possesses the scientific expertise that the latter does not."). However, we are uncertain whether documentary evidence of a BAC DataMaster senior operator's permit issued by the ODH that is

in effect on the date of the breath test, such as Sergeant Knowlton's, creates an irrebuttable presumption of validity, or whether it merely creates a rebuttable presumption of validity. Therefore, we will review the applicable regulations to ascertain the correctness of the trial court's conclusion that compliance with the proficiency examination requirements is a prerequisite to a valid BAC DataMaster senior operator's permit renewal.

### F. BAC DataMaster Qualifications

{¶35}   Ohio Adm.Code 3701–53–07(C) states that a "senior operator" or an "operator" is qualified to perform breath tests. The BAC DataMaster is an approved breath testing evidential instrument. Ohio Adm.Code 3701–53–02(A)(1). Thus, a "senior operator" or an "operator" is qualified to administer the BAC DataMaster. Ohio Adm.Code 3701–53–07(C).

{¶36}   A person who wishes to function as a senior operator or an operator of a BAC DataMaster must apply to the ODH for a permit. Ohio Adm.Code 3701–53–09(B). The rule further states that the ODH "shall issue permits to perform tests to determine the amount of alcohol in a person's breath to individuals who qualify under the applicable provisions of rule 3701-53-07 of the Administrative Code." *Id.*

{¶37}   Ohio Adm.Code 3701–53–07(D) sets forth the qualifications for obtaining a BAC DataMaster senior operator's permit:

(1) Being a high school graduate or having passed the "General Education Development Test";

(2) Being a certified law enforcement officer sworn to enforce sections 4511.19 and/or 1547.11 of the Revised Code, or any other equivalent statute or local ordinance prescribing a defined or prohibited breath alcohol concentration, or a certified corrections officer, and;

(3) Having demonstrated that he or she can properly care for, maintain, perform

instrument checks upon and operate the evidential breath testing instrument by

having successfully completed a basic senior operator, upgrade or conversion

training course for the type of approved evidential breath testing instrument for

which he or she seeks a permit.

{¶38} A BAC DataMaster senior operator's permit "shall expire one year from the effective date, unless revoked or voluntarily surrendered" before the expiration date. Ohio Adm.Code 3701-53-09(C). However, a person holding a BAC DataMaster senior operator's permit "may seek renewal * * * by filing an application with the director no sooner than six months before the expiration date of the current permit." *Id.*

{¶39} Ohio Adm.Code 3701-53-09(F) sets forth the qualifications for renewal of a BAC DataMaster senior operator's permit and states:

To qualify for renewal of a permit under paragraph (A) or (B) of this rule:

(1) A permit holder shall present evidence satisfactory to the director that he or

she continues to meet the qualifications established by the applicable provisions

of rule 3701-53-07 of the Administrative Code for issuance of the type of permit

sought.

* * * *

{¶40} In addition to the initial application and renewal procedures, Ohio Adm.Code 3701-53-08(C) states that BAC DataMaster senior operator permit holders or applicants "shall be subject to surveys and proficiency examinations conducted at the director's discretion." "A survey shall consist of a review of the permit holder's or applicant's compliance with the requirements of this chapter." Ohio Adm.Code 3701-53-08(C)(1). "A proficiency examination

shall consist of an evaluation of the permit holder's or applicant's ability to test samples using the evidential breath testing instrument for which the permit is held or sought." Ohio Adm.Code 3701-53-08(C)(2). "During proficiency examinations, senior operators, operators and applicants shall accept samples, perform tests and report all results to a representative of the director or the proficiency examination administered by a national program for proficiency testing." Ohio Adm.Code 3701-53-08(E).

## G. Interpretation

{¶41} The plain language of the administrative rules does not support a conclusion that a valid permit renewal requires a BAC DataMaster senior operator to undergo a proficiency examination. Ohio Adm.Code 3701-53-09(F) contains the requirements for obtaining a BAC DataMaster senior operator renewal and does not mention or reference proficiency examinations or Ohio Adm.Code 3701-53-08(E). Rather, it plainly states that a BAC DataMaster senior operator permit holder qualifies for renewal of that permit so long as the permit holder "present[s] evidence satisfactory to the director that he or she continues to meet the qualifications established by the applicable provisions of rule 3701-53-07 of the Administrative Code for issuance of the type of permit sought." The qualifications contained in the "applicable provisions of" Ohio Adm.Code 3701-53-07 for BAC DataMaster senior operators are contained in Ohio Adm.Code 3701-53-07(D). An individual qualifies for a BAC DataMaster senior operator's permit if the individual (1) is a high school graduate or passed the "General Education Development Test," (2) is a certified law enforcement officer, and (3) demonstrates that the individual "can properly care for, maintain, perform instrument checks upon and operate the evidential breath testing instrument by having successfully completed a basic senior operator, upgrade or conversion training course for the" BAC DataMaster.

{¶42}   We have found nothing in the ODH regulations that requires a BAC DataMaster senior operator seeking a permit renewal to undergo a proficiency examination during which the individual must accept samples in order to qualify for renewal. Instead, Ohio Adm.Code 3701-53-08 clearly indicates that the ODH possesses discretion to conduct proficiency examinations upon BAC DataMaster senior operator permit holders. The rule does not indicate that the ODH must conduct a proficiency examination before renewing a BAC DataMaster senior operator's permit.

{¶43}   Therefore, we disagree with the trial court's conclusion that Ohio Adm.Code "3701-53-08(C)(1) and (2) delineate[] the standards for continuing qualification." Instead, Ohio Adm.Code 3701-53-09(F) plainly states that a BAC DataMaster senior operator permit holder qualifies for renewal of that permit so long as the permit holder "present[s] evidence satisfactory to the director that he or she continues to meet the qualifications established by the applicable provisions of rule 3701-53-07 of the Administrative Code for issuance of the type of permit sought." Thus, Ohio Adm.Code 3701-53-07, and not Ohio Adm.Code 3701-53-08(C)(1) and (2), delineates the standards for renewal.

{¶44}   Consequently, we agree with the State that the trial court misconstrued the applicable administrative regulations to require a BAC DataMaster senior operator permit holder seeking a renewal to complete a proficiency examination as contemplated in Ohio Adm.Code 3701-53-08 before the renewal becomes valid. The trial court thus incorrectly concluded that Sergeant Knowlton lacked a valid permit and incorrectly suppressed Williams's BAC DataMaster test results.

### IV.  Conclusion

{¶45}  Accordingly, based upon the foregoing reasons, we sustain the State's sixth assignment of error. The State's remaining assignments of error are moot; and we need not address them. App.R. 12(A)(1)(c). We reverse the trial court's decision suppressing Williams's BAC DataMaster test results and remand for further proceedings.

JUDGMENT REVERSED AND CAUSE REMANDED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS REVERSED AND CAUSE IS REMANDED. Appellee shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J.: Concurs in Judgment and Opinion.
McFarland, J.: Concurs in Judgment Only.

For the Court,


By: _____
        Marie Hoover, Judge




**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.