[Cite as *State v. Dumas*, 2020-Ohio-4554.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 19AP-526 |
| v. | : | (C.P.C. No. 18CR-220) |
| Neshon C. Dumas, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 22, 2020

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Michael P. Walton*, for appellee. **Argued:** *Michael P. Walton.*

**On brief:** *Yeura R. Venters*, Public Defender, and *Ian J. Jones*, for appellant. **Argued:** *Ian J. Jones.*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Neshon C. Dumas, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to no contest pleas entered by Dumas on charges of vehicular homicide and failure to stop after an accident. For the following reasons, we affirm in part and reverse in part.

**I. Facts and Procedural History**

{¶ 2} The conviction at issue in this appeal arises from a traffic collision that occurred on October 7, 2017 near the intersection of Lockbourne Road and Watkins Road, in Franklin County, Ohio. Dumas was driving a car southbound on Lockbourne Road and initiated a left turn onto Watkins Road. At the same time, Soungoutoumba Macalou was driving a motorcycle northbound on Lockbourne Road. As Dumas turned toward Watkins Road, she traversed the northbound lane of Lockbourne Road, crossing the path of

Macalou.  Macalou's motorcycle struck the front passenger side of Dumas's car, ejecting him from the motorcycle.  Dumas continued onto Watkins Road and fled the scene. Macalou died as a result of the injuries he suffered in the collision. Based on statements made by a witness at the scene of the collision and an anonymous tip called into police, Dumas was identified as the driver of the car involved in the collision.  At the time of the collision, Dumas was driving under the authority of a temporary instruction permit, issued under R.C. 4507.05.

{¶ 3}  Dumas was indicted on one count of vehicular homicide, a fourth-degree felony in violation of R.C. 2903.06, and one count of failure to stop after an accident, a third-degree felony in violation of R.C. 4549.02.  On September 20, 2018, Dumas moved to amend the indictment to modify the vehicular homicide charge from a fourth-degree felony to a first-degree misdemeanor.  Dumas argued her temporary instruction permit was valid at the time of the collision, negating the element that elevated the vehicular homicide charge from a first-degree misdemeanor to a fourth-degree felony.  Plaintiff-appellee, State of Ohio, filed a memorandum in opposition arguing Dumas was operating her vehicle in violation of the restrictions imposed on her temporary instruction permit at the time of the collision, thereby invalidating the permit. The state argued that because Dumas's temporary instruction permit was invalid at the time of the collision, she was properly charged with vehicular homicide as a fourth-degree felony offense. The trial court conducted a hearing on the motion to amend the indictment on March 13, 2019.  The state presented testimony from an Ohio Bureau of Motor Vehicles ("BMV") investigator regarding the history of Dumas's temporary instruction permit.  At the close of the hearing, the trial court verbally denied Dumas's motion to amend the indictment.  The trial court did not issue a written ruling on the motion to amend the indictment.

{¶ 4}  Dumas subsequently entered a no contest plea to the charges as set forth in the indictment.  The trial court conducted a sentencing hearing and imposed a sentence of 18 months imprisonment on the vehicular homicide conviction, to be served concurrently with 3 years  imprisonment on the failure to stop after an accident conviction.

## II. Assignments of Error

{¶ 5}  Dumas appeals and assigns the following four assignments of error for our review:

[I.] The trial court erred by finding Ms. Dumas guilty of Vehicular Homicide as a fourth degree felony, as the State presented a statement of facts at the no contest plea hearing which positively contradicted the felony charged in the indictment by negating an element essential to the enhancement of Vehicular Homicide from a first degree misdemeanor to a fourth degree felony carrying mandatory prison time.

[II.] The evidence was legally insufficient to support the convictions for Vehicular Homicide as a fourth degree felony and to support the imposition of mandatory prison time, as the State presented a statement of facts at the no contest plea hearing which positively contradicted the felony charged in the indictment by negating an element essential to the enhancement of Vehicular Homicide from a first degree misdemeanor to a fourth degree felony carrying mandatory prison time.

[III.] The trial court erred by overruling Appellant's motion to amend the indictment.

[IV.] The trial court erred by imposing a mandatory prison term for Vehicular Homicide as a felony of the fourth degree, as the State acknowledged Appellant had a temporary instruction permit, thus negating the element under R.C. 2903.06(E)(2)(b) required to make the prison term mandatory.

The same legal issue forms the basis for each of Dumas's four assignments of error, therefore we will address them together.

### III. Analysis

{¶ 6} Dumas was charged in the first count of the indictment with vehicular homicide, a fourth-degree felony offense in violation of R.C. 2903.06. The indictment alleged Dumas negligently caused Macalou's death while operating a motor vehicle without a valid driver's license, commercial driver's license, temporary instruction permit, probationary license, or non-resident operating privilege. She ultimately pled no contest to and was convicted of vehicular homicide as set forth in the first count of the indictment.

{¶ 7} The statute defining vehicular homicide provides that negligently causing the death of a person while operating a motor vehicle is a first-degree misdemeanor unless one of several specified conditions is met, including when "at the time of the offense, the

offender * * * did not have a valid driver's license, commercial driver's license, temporary instruction permit, probationary license, or nonresident operating privilege." R.C. 2903.06(C).  Under those circumstances, vehicular homicide is a fourth-degree felony. R.C. 2903.06(C).

**{¶ 8}**   At the time of the collision, Dumas was driving under the authority of a temporary instruction permit issued pursuant to R.C. 4507.05(A)(2).  That law provides the BMV may issue a temporary instruction permit and temporary instruction permit identification card to a person who is at least 16 years old[1] entitling the person to drive a motor vehicle under the following conditions:

> (a) The permit and identification card are in the holder's immediate possession;
>
> (b) The holder is accompanied by a licensed operator who is at least twenty-one years of age, is actually occupying a seat beside the driver, and does not have a prohibited concentration of alcohol in the whole blood, blood serum or plasma, breath, or urine as provided in division (A) of section 4511.19 of the Revised Code;
>
> (c) The total number of occupants of the vehicle does not exceed the total number of occupant restraining devices originally installed in the motor vehicle by its manufacturer, and each occupant of the vehicle is wearing all of the available elements of a properly adjusted occupant restraining device.

R.C. 4507.05(A)(2).

**{¶ 9}**   There was not a licensed driver in the passenger seat beside Dumas while she was driving on October 7, 2017 as required under R.C. 4507.05(A)(2)(b).  Thus, the question we must resolve is whether Dumas's failure to comply with the requirement of having a licensed driver in the passenger seat while she was driving invalidated her temporary instruction permit.  If Dumas's temporary instruction permit was invalid at the time of the collision with Macalou, she could be charged with and convicted of vehicular homicide as a fourth-degree felony; however, if her temporary instruction permit was valid

---

[1] It appears Dumas was more than 16 years old at the time her temporary instruction permit was issued. Therefore, her permit was governed by the restrictions set forth in subsection (A)(2) of R.C. 4507.05, rather than the restrictions set forth in subsection (A)(1) of the statute.

at the time of the collision, the offense should have been classified as a first-degree misdemeanor.

{¶ 10} Resolving the question before us requires determining the meaning of the term "valid" under R.C. 2903.06(C), which is not defined in the statute, and whether failure to comply with the conditions set forth in R.C. 4507.05(A) renders a temporary instruction permit invalid.[2] By denying Dumas's motion to amend the first count of the indictment, the trial court effectively found that Dumas's failure to comply with the condition under R.C. 4507.05(A)(2)(b), requiring her to have a licensed driver of appropriate age in the passenger seat, rendered her temporary instruction permit invalid. Interpretation of a statute is a matter of law which we review de novo. *DHSC, LLC v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 11AP-424, 2012-Ohio-1014, ¶ 13.

{¶ 11} When construing the language of a statute, a court must "ascertain and give effect to the intention of the General Assembly." *Dodd v. Croskey*, 143 Ohio St.3d 293, 2015-Ohio-2362, ¶ 24, citing *Henry v. Cent. Natl. Bank*, 16 Ohio St.2d 16 (1968), paragraph two of the syllabus. We look to the language of the statute to determine legislative intent. *Id.*, citing *Boley v. Goodyear Tire & Rubber Co.*, 125 Ohio St.3d 510, 2010-Ohio-2550, ¶ 20. When a statute is clear and unambiguous, it may not be enlarged, narrowed, or abridged through statutory construction. *Taber v. Ohio Dept. of Human Servs.*, 125 Ohio App.3d 742, 747 (10th Dist.1998).

{¶ 12} We are unaware of any appellate court decision in Ohio that has addressed the validity of a temporary instruction permit when the driver fails to comply with the conditions of that permit in the context of enhancing the level of a criminal offense, as is presented in this appeal. However, two decisions from other appellate courts have touched on whether a temporary instruction permit is rendered invalid due to failure to comply with the applicable restrictions.

{¶ 13} The Eleventh District Court of Appeals concluded in a 1988 decision that operating a motorcycle in violation of the restrictions on a temporary permit did not

---

[2] The state cited *State v. Williams*, 4th Dist. No. 17CA8, 2017-Ohio-4455, in its notice of supplemental authority. The *Williams* decision involved determination of whether a highway patrol officer had a valid permit to administer a blood-alcohol test. Although the court in *Williams* referred to definitions of "valid" from Black's Law Dictionary and a Supreme Court of Ohio decision quoting Webster's New World Dictionary, we do not find it otherwise illuminating.

invalidate the temporary permit.  *State v. Neuvirth*, 53 Ohio App.3d 27 (11th Dist.1988). The defendant in *Neuvirth* had a temporary permit, issued under R.C. 4507.05, to operate a motorcycle with the following restrictions: "(1) daylight hours only, (2) no riders, (3) not valid on congested roads and interstate highways, and (4) must wear approved protective helmet and use eye protection."  *Neuvirth* at 28.  The defendant was cited for operating his motorcycle on a highway at night with a passenger.  He was charged with violating a statute that prohibited operating a motorcycle without a valid license.  After the trial court denied his motion to dismiss, the defendant pled no contest to the charge.  *Id.*  On appeal, the defendant argued the trial court erred by finding that violating a restriction on his temporary permit was equivalent to operating a motorcycle without a license.  The Eleventh District Court of Appeals reversed, noting there was no language in the traffic code prohibiting driving in violation of restrictions imposed on a class of operators and no criminal statute providing that violating the restrictions on a permit resulted in invalidation of the permit.  *Id.* at 30.  The court reasoned "[i]t does not follow that one may be found guilty of driving *without* a permit simply because one has violated restrictions imposed on that permit."  (Emphasis sic.)  *Id.*

{¶ 14}  The state argues *Neuvirth* should not be considered persuasive authority on this court because the law was amended in 1997 to impose a prohibition on operating a motor vehicle in violation of the conditions imposed on a permit.  The state is correct that R.C. 4507.05(F)(1) now provides that "[n]o holder of a permit issued under [R.C. 4507.05(A)] shall operate a motor vehicle upon a highway or any public or private property used by the public for purposes of vehicular travel or parking in violation of the conditions established under [R.C. 4507.05(A)]."  However, while that statutory amendment supersedes the *Neuvirth* court's observation that no language in the traffic code prohibited driving in violation of the restrictions on a temporary license, it does not modify the further conclusion in *Neuvirth* that "there is no Ohio criminal statute which provides that violation of restrictions on a permit results in an invalidation of the permit."  *Neuvirth* at 30.  Thus, we can consider *Neuvirth* as persuasive authority in this appeal.

{¶ 15}  In contrast to *Neuvirth*, dicta from a 1994 decision by the Ninth District Court of Appeals might be construed to implicitly suggest that violating the conditions imposed on a temporary instruction permit invalidated the permit.  *State v. Rooker*, 93 Ohio App.3d

154 (9th Dist.1994). The defendant in *Rooker* was convicted of violating a statute prohibiting permitting the operation of a motor vehicle "knowing the operator does not have a valid driver's license." *Id.* at 155. When stopped by police, the defendant, whose driver's license had been suspended, was in the passenger seat of a car driven by her son, who had a temporary instruction permit. On appeal, the court determined that because the defendant's driver's license had been suspended, she did not qualify as a "licensed operator" for purposes of compliance with the restrictions on her son's temporary instruction permit, which required that a licensed operator actually occupy the seat beside him while driving. *Id.* at 156. Based on this reasoning, the Ninth District Court of Appeals affirmed the conviction. The court did not squarely address the question of whether driving without a licensed driver in the passenger seat invalidated the temporary instruction permit held by the defendant's son, but it implicitly suggests this conclusion by holding that the defendant could be convicted for allowing the operation of a motor vehicle knowing the operator did not have a valid driver's license.

{¶ 16} Notwithstanding the Ninth District's implicit suggestion in *Rooker*, based on our review of the relevant statutes, we conclude that operating a motor vehicle in violation of the restrictions imposed on a temporary instruction permit does not render the temporary instruction permit invalid. R.C. 4507.05(A) authorizes the registrar of motor vehicles to issue a temporary instruction permit to an applicant, and that temporary instruction permit entitles the applicant to operate a motor vehicle under specific conditions, as set forth in subsection (A)(1) or (2) of the statute, depending on the applicant's age. The statute provides that "[a] temporary instruction permit to drive a motor vehicle other than a commercial motor vehicle shall be valid for a period of one year." R.C. 4507.05(C). The statute expressly prohibits operating a vehicle in violation of the conditions imposed under subsection (A) of the statute and specifies that doing so constitutes a minor misdemeanor offense. R.C. 4507.05(F)(1) and (I). Thus, within R.C. 4507.05 there is an express condition invalidating a temporary instruction permit—i.e., the passage of more than 12 months from the date of issuance. If the General Assembly wished to establish that violating the restrictions on a temporary instruction permit also invalidated the permit, it could have clearly done so. Instead, it provided a punishment for violating those restrictions.

{¶ 17} We find our construction of the statute to be more consistent with the general statutory scheme governing driver's licenses, which recognizes the offense of driving without a valid license separately from the offense of driving in violation of restrictions imposed on a driver's license. *See* R.C. 4510.11(B) (prohibiting operation of a motor vehicle "in violation of any restriction of the person's driver's or commercial driver's license or permit"); R.C. 4510.12(A)(1) (prohibiting operation of a motor vehicle "unless the person has a valid driver's license issued under Chapter 4507. of the Revised Code or a commercial driver's license issued under Chapter 4506. of the Revised Code").

{¶ 18} Having concluded that failure to comply with the restrictions imposed on a temporary instruction permit under R.C. 4507.05(A) does not invalidate the permit, we further conclude that driving in violation of those restrictions does not constitute failure to have a valid temporary instruction permit for purposes of the offense enhancements under R.C. 2903.06.

{¶ 19} Dumas argues in her third assignment of error that the trial court erred by denying her motion to amend the indictment. Generally, we review a trial court's decision regarding amendment of an indictment for abuse of discretion. *See State v. Abdullah*, 10th Dist. No. 07AP-427, 2007-Ohio-7010, ¶ 9 (holding that if an amendment to an indictment does not change the name or identity of the offense charged, the decision to allow the amendment is reviewed for abuse of discretion); *State v. Williams*, 53 Ohio App.3d 1, 5 (10th Dist.1988) ("A trial court's authority to allow an amendment is discretionary. However, the trial court can abuse its discretion by refusing to amend an indictment."). As explained above, we conclude that driving in violation of the restrictions on her temporary instruction permit did not render Dumas's permit invalid; therefore, the trial court abused its discretion by denying her motion to amend the first count of the indictment to change the offense to a first-degree misdemeanor.

{¶ 20} Dumas argues in her first assignment of error that the trial court erred by finding her guilty of fourth-degree felony vehicular homicide because the prosecutor's statement of facts negated an element essential to the enhancement of the offense. Generally, when an indictment contains sufficient allegations to state a felony offense and the defendant pleads no contest, the trial court must find the defendant guilty. *State v. Geiger*, 10th Dist. No. 15AP-1120, 2016-Ohio-7571, ¶ 17, citing *State v. Bird*, 81 Ohio St.3d

582, 584 (1998). However, when a prosecutor presents a statement of facts that positively contradict the felony charged in the indictment by negating an essential element to the commission of the offense, the court may not find the defendant guilty based on the charges alleged in the indictment. *Id.* at ¶ 18. At the plea hearing, the prosecutor made the following statement regarding the validity of Dumas's temporary instruction permit at the time of the collision:

> Ms. Dumas did not have a valid operator's license at the time.
> She did have a temporary instructor's [sic] permit and she did
> not have anyone else in the car with her at the time.

(May 16, 2019 Tr. at 8.) As explained above, we conclude Dumas's failure to comply with the requirement under R.C. 4507.05(A)(2)(b) of having a licensed driver in the seat beside her did not invalidate her temporary instruction permit. Therefore, the trial court erred by finding Dumas guilty of vehicular homicide as a fourth-degree felony offense.

{¶ 21} Accordingly, we sustain Dumas's first and third assignments of error. Our disposition of these assignments of error renders moot her second and fourth assignments of error.

**IV. Conclusion**

{¶ 22} For the foregoing reasons, Dumas's first and third assignments of error are sustained, and her second and fourth assignments of error are rendered moot. We reverse the portion of the judgment of the Franklin County Court of Common Pleas finding Dumas guilty of Count 1 of the indictment and imposing sentence on that conviction; we affirm the portion of the judgment finding Dumas guilty of Count 2 of the indictment pursuant to her no contest plea and imposing sentence on that conviction. We remand this matter to that court to vacate the portion of its judgment convicting Dumas on Count 1 of the indictment and imposing sentence on that conviction, and for further proceedings in accordance with law and this decision.

*Judgment affirmed in part and reversed in part;*
*cause remanded with instructions.*

BROWN & KLATT, JJ., concur.

———————————