Wanamaker, J.
 

 On the 1st day of October, 1917, the board of commissioners of Clermont county passed a preliminary resolution in favor of the construction of the improvement herein involved. It was followed by other resolutions touching the improvement and seeking state aid.
 

 On January '29, 1920, the county commissioners passed a resolution providing, among other things, that of the cost of the improvement the state was to pay 60 per cent., the remaining 40 per cent, to be paid by the county, the townships through which the highway passed, and the abutting property holders on either side thereof; it being set forth therein that the abutting property holders were to pay 8 per cent. Thereafter bonds of the county were issued and sold to pay the proportion of the cost to be paid by the county, the township, and the property holders.
 

 On March 1, 1920, the state highway commissioner changed the plans and specifications from a water bound to a macadam road, thereby increasing the cost and requiring the sale of additional county bonds. So far the proceedings are not seriously attacked.
 

 On October 3, 1921, the board of commissioners of Clermont county undertook to increase the assessment area, theretofore limited to “abutting property owners,” to “property owners within one mile on either side” of the improvement, which action was by the unanimous vote of the board. Subsequent to the passage of this resolution the
 
 *569
 
 county surveyor, agreeable to the statute and pursuant to the resolution of the county commissioners, made a tentative assessment upon the various tracts and parcels of land in the district lying within one mile of either side of the improvement.
 

 It is not seriously claimed that any attempt was made to make an actual assessment other than this district assessment first made by the county surveyor, as aforesaid. The major question is, therefore, whether or not this action of the board of county commissioners on October 3, 1921, in organizing a district, and providing for the assessment of lands throughout such district for partial payment of the improvement, was substantially a legal assessment.
 

 It is obvious that within recent years the state of Ohio has entered upon a new program for the construction, improvement, and maintenance of highways. In earlier days this work was committed solely to the local authorities, and in many cases, either from unwillingness to improve, or inability to improve, the highways of certain portions of the state were practically impassable, especially for heavy traffic. In order to make the needed improvements a general policy of state aid was provided for through joint action of local and state authorities. Much legislation has been passed to provide for and to promote this policy, and large powers have been invested in the state highway department in that behalf; and there has also been a great enlargement of the powers of local authorities in order to accomplish the purpose sought by this new policy of road improvement. The particular statutory sections involved
 
 *570
 
 in this improvement are Section 1211 and those following it.
 

 The particular claim of the plaintiffs, and necessary to their contention, is that Section 1214 does not apply. It must be agreed that under Section 1211, and the companion sections following, the assessments shall not be made except “upon the completion of the improvement.” No question arises here as to the portion to be paid by the state, the county, the township, or the lands benefited. The only question is whether the private lands assessed are limited to abutting property owners, by virtue of the law and the proceedings of the county commissioners, county surveyor, etc., or whether at the time and in the manner shown by the record the county commissioners were authorized to and did legally create the one-mile district on either side of the improvement, and legally assess the lands within that district for such improvement.
 

 Now Section 1214, here in question, is an unusually lengthy section. However, the pertinent part is included within this language:
 

 “Ten per cent, of the cost and expense of the improvement, excepting therefrom the cost and expense of bridges and culverts, shall be a charge upon the property abutting on the improvement, provided the total amount assessed against any owner of abutting property shall not exceed thirty-three per cent, of the valuation of such abutting property for the purposes of taxation: * * * And provided further, that the county commissioners by a resolution passed by unanimous vote may make the assessment of ten per cent, or more.
 
 *571
 
 as the ease may he, of the cost and expense of improvement against the real estate, within one-half mile of either side of the improvement or against the real estate within one mile of either side of the improvement. Township trustees shall have the same power to increase the per cent, to be specially assessed and to change the assessment area where the improvement is made on their application.”
 

 The statute then continues, and makes provision as to the surveyor’s tentative apportionment, as to action by the county commissioners or township trustees, as to publication of notice, and so forth. At the close of the section the following provision appears, which is also pertinent in the consideration of this question:
 

 “If any owner of property affected thereby desires to make objections he may-file his objection to said assessment in writing with the county commissioners or township trustees, as the case may be, before the time for said hearing. If any objections are filed the county commissioners or township trustees shall hear the same and act as an equalizing hoard and they may change said assessments if in their opinion any change is necessary to mate the same just and equitable, and such commissioners or trustees shall approve and confirm said assessments as reported by the surveyor or modified by them. ¡Such assessments when so approved and confirmed shall he a lien on the land chargeable therewith.”
 

 Now, because the preliminary resolution passed in 1917 limited the property to be assessed to the abutting property owners, it is urged that that
 
 *572
 
 fixed or limited the county commissioners thereafter as to the lands they had any right to assess. The statute itself clearly presumes that there had been a prior limitation put upon the lands locally assessed, for the statute expressly refers to a power “to change the assessment area.” That certain parties were exempted under the first arrangement does not give such parties a right per
 
 se
 
 to complain as to future assessments made pursuant to the statute. The same rule would apply, had the county commissioners passed preliminary resolutions providing for a one-half mile district and thereafter regularly proceeded to enlarge it by making it a one mile district, upon either side of the improvement. Where and how would any constitutional rights be invaded by such a change, by distributing the local costs over a wider area? Such course would clearly reduce the costs to each property owner under the law of general average.
 

 Unless this statute is construed in connection with the other statutes immediately preceding, to which it refers in many parts of its verbiage, the statute is a mere nullity. It would be strange, indeed, if the Legislature seriously entered upon the task of enacting a statute of such great length, containing so many different provisions in orderly form touching upon road improvements, and did it all without any purpose of applying and construing the statute in connection with the other statutes dealing with the same subject-matter. We are compelled, therefore, to give this statute a reasonable construction, and that reasonable construction authorizes the county commissioners to at anv
 
 *573
 
 time enlarge the district agreeable to the statute before an assessment is finally made.
 

 We find nothing in the statutes expressly or impliedly limiting the board of county commissioners in their final assessment to the property originally contemplated, where the proper notice has been duly given, affording an opportunity to challenge the assessment.
 

 Now, in this case, was proper notice given? It is conceded that the original resolution relating to local property to be taxed was limited to “abutting property.” We are agreed that the commissioners had the right thereafter to change the district, but such change was accompanied by the obligation to give due notice thereof to the property interests affected by such change, and when they enlarged the amount of property to be locally assessed to all real estate “within one mile of either side thereof” it became necessary to give a proper notice to such property owners, with an opportunity to be heard as to all or any part of such assessment. The final notice given was, as shown by Exhibit C, to landowners
 
 along
 
 section 1 of I. C, H. No. 30, Ohio Pite, between Bethel and the Brown county line.
 

 Now, such notice, especially in view of the earlier resolutions relating only to “abutting property owners,” would be well calculated to mislead any other property owners than those abutting on the improvement. This is so self-evident that it is the application merely of common sense to plain popular phrase. We do not feel that such notice was sufficient under the law to advise all property owners within the one-mile district on either side
 
 *574
 
 of said improvement that they were about to be assessed, or sufficient to require of them an examination of the files of the office of the board of county commissioners and to appear and protest any assessment made. And the Court of Appeals was right in so holding. This cause, however, is a chancery one, addressed to the common sense and common conscience of a court of equity. It is not only our duty to properly protect the public purse, but at the same time to safeguard the rights of all property owners affected.
 

 The improvement has been completed and it should be paid for. The county, particularly this locality, has the benefit of it and should be required by due process of law to respond to its just proportion of the cost. But due process of law has not yet been observed as to notice.
 

 We
 
 find no legal barriers under the statute, especially in the court of equity, to modifying the judgment of the Court of Appeals, from a permanent injunction, as entered, to a temporary one, and to remanding the cause for further proceedings to the court of common pleas of Clermont county, with instructions (1) that an injunction be granted in favor of the taxpayers, party to this suit, for a period of 30 days; (2) that within 10 days the board of county commissioners, if it so elects, may make application to the court for leave to give further notice to all property owners within the one-mile district, agreeable to law; (3) that a date be set for a hearing, that such hearing be duly had, and such action taken in the premises as the hearing and the evidence submitted therein justly warrant; (4) that in the event said board
 
 *575
 
 of county commissioners fails so to do said injunction be made permanent as to all property owners affected by sucb failure of legal duty.
 

 Tbe judgment of tbe Court of Appeals is therefore modified in accordance with tbe above holding, and the cause is remanded to the court of common pleas for such further proceedings as are required by this judgment and opinion.
 

 Judgment modified.
 

 Marshall, C. J., Jones, Day and Allen, JJ., concur.
 

 Matthias, J., concurs in proposition 5 of the syllabus, but not in modification of judgment.