[Cite as *State v. Storms*, 2017-Ohio-8658.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | Case No.  16CA18 |
| vs. | : | |
| KENNETH S. STORMS, JR., | : | DECISION AND JUDGMENT ENTRY |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Timothy P. Gleeson, Logan, Ohio, for appellant.

Adam R. Salisbury, Gallipolis City Solicitor, Gallipolis, Ohio, for appellee.

GALLIPOLIS MUNICIPAL COURT
DATE JOURNALIZED: 11-15-17
ABELE, J.

{¶ 1}   This is an appeal from a Gallipolis Municipal Court judgment that ordered Kenneth S. Storms, Jr., defendant below and appellant herein, to pay $10,961.23 in restitution to the Ohio Department of Natural Resources (ODNR).   Appellant assigns the following error for review:

> ASSIGNMENT OF ERROR:
>
> "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FINDING RESTITUTION WAS MANDATORY PURSUANT TO R.C. 1531.201."

{¶ 2}   On December 9, 2015, appellant left a voicemail for Wildlife Officer Roy Rucker and

stated that he had shot a deer on opening day of the 2015 deer gun season, but that he could not locate the deer.   Officer Rucker returned the call and instructed appellant that, if he found the deer, he should tag it, check it in as he would normally, and enter the date and time into the ODNR system.   Officer Rucker also asked appellant to let him know when he had found and registered the deer so that Rucker could note in the system the reason for the late registration (because the deer had not been timely located).

{¶ 3}   On December 27, 2015, appellant contacted Officer Rucker to inform him, per the officer's request, that he had found the deer and checked it in, as the officer had advised.   However, when Officer Rucker logged onto appellant's ODNR customer account to comment about the circumstances of registering the deer outside the permitted time frame, Rucker noticed that appellant had purchased his hunting license and deer permit on December 2, 2015.   Because appellant told Officer Rucker that he had shot the deer on the November 30, 2015 opening day, Rucker visited appellant's residence, confirmed the date of the shot, and issued two citations (1) hunting without a license in violation of R.C. 1533.10, and (2) hunting without a deer permit in violation of R.C. 1533.11, both fourth-degree misdemeanors.   Also at that time, Officer Rucker seized the deer's antlers as evidence.

{¶ 4}   After a bench trial, the trial court found appellant guilty of both charges.   The state then requested restitution and asserted that, in accordance with R.C. 1531.201, the statutory scoring formula required $10,961.23 for restitution, which the wildlife officer testified is a "trophy class deer."   At the sentencing hearing, the court ordered that (1) $10,961.23 in restitution be paid to the ODNR, (2) the antlers be forfeited to ODNR to give to the Gallia County Conservation Club for educational use, and (3) appellant's hunting license be suspended until restitution is paid per R.C.

1531.201.   This appeal followed.

{¶ 5}   In his sole assignment of error, appellant asserts that the trial court erred by finding that the ordered amount of restitution is mandatory under R.C. 1531.201.   Appellant argues that the state advocated, and the trial court agreed, that R.C. 1531.201 controlled the issue of restitution. Appellant claims, however, that (1) R.C. 1533.99 should apply and that provision gives a trial court discretion to order restitution, (2) R.C. 2929.28(B) allows courts to consider an offender's ability to pay a financial sanction, and (3) his trial counsel provided ineffective assistance.

{¶ 6}   According to R.C. 1531.02, "[t]he ownership and title to all wild animals in this state, not legally confined or held by private ownership legally acquired, is in the state, which holds title in trust for the benefit of all the people."   Here, appellant violated R.C. 1533.10, which provides: "* * * no person shall hunt any wild bird or wild quadruped without a hunting license," and R.C. 1533.11, which provides: "* * * no person shall hunt deer on lands of another without first obtaining an annual deer permit."   Both violations are fourth-degree misdemeanors. R.C. 1533.99(F).

{¶ 7}   The trial court applied R.C. 1531.201(B), which provides: "The chief of the division of wildlife or the chief's authorized representative *may bring* a civil action to recover possession of or the restitution value of any wild animal held, taken, bought, sold, or possessed in violation of this chapter or Chapter 1533 of the Revised Code or any division rule against any person who held, took, bought, sold, or possessed the wild animal.   The minimum restitution value to the state for wild animals that are unlawfully held, taken, bought, sold, or possessed shall be established in division rule." (Emphasis added.)   R.C. 1531.201(C)(1) provides: "In addition to any restitution value established in division rule, a person who is convicted of a violation of this chapter or Chapter 1533 of the Revised Code or a division rule governing the holding, taking, buying, sale, or possession of

an antlered white-tailed deer with a gross score of more than one hundred twenty-five inches also *shall pay an additional restitution value* that is calculated using the following formula: Additional restitution value = ((gross score - 100)$^2$ x \$1.65) (Emphasis added.)"  Section (C)(2) details the measurement of the deer's antlers to form the gross score.  Finally,  R.C.  1531.201(D)  provides: "Upon conviction of holding, taking, buying, selling, or possessing a wild animal in violation of this chapter, Chapter 1533 of the Revised Code, or a division rule, *the chief shall revoke* until payment of the restitution value is made such hunting license, fur taker permit, deer permit, wild turkey permit, wetlands habitat stamp, and fishing license issued to that person under this chapter or Chapter 1533 of the Revised Code.  No fee paid for such a license, permit, or stamp shall be returned to the person."  (Emphasis added.)

{¶ 8}  Appellant argues that R.C. 1531.99 should control.  Under R.C. 1533.99(G), "A court that imposes sentence for a violation of any section of this chapter governing the holding, taking, or possession of wild animals *may require* the person who is convicted of or pleads guilty to the offense, in addition to any fine, term of imprisonment, seizure, and forfeiture imposed, to make restitution for the minimum value of the wild animal or animals illegally held, taken, or possessed as established under section 1531.201 of the Revised Code."  Appellant argues that the use of the term "may" in R.C. 1533.99(G) provides trial courts with the authority and discretion to order restitution in an amount calculated pursuant to R.C. 1531.201, but does not require a court to order restitution. Appellant further argues that his view is supported by a revision of this code section in 2007 Am.H.B. 238.  In this legislation, the change to Division (G) of R.C. 1533.99 replaced the word "shall" with "may."  The Bill Analysis explains: "Authorizes a court, rather than requires a court as in former law, upon the conviction or a plea of guilty by a person for the illegal holding, taking,

buying, selling, or possession of a wild animal, to require the person to make restitution for the minimum value of the animal."   Ohio Bill Analysis, 2007 H.B. 238.

{¶ 9}   We begin our review by observing that R.C. 1531.201 contains two separate subsections for calculating restitution values for wild animals.   The first section, R.C. 1531.201(B), applies to "any wild animal," while R.C. 1531.201(C)(1) applies only to antlered white-tailed deer. Only R.C. 1531.201(B) involves "minimum value" restitution.   This subsection allows ODNR to establish a schedule to assign a minimum value for "any wild animal."   In comparison, R.C. 1531.201(C)(1) *mandates* that restitution for antlered white-tailed deer with a gross score of more than 125 inches "shall pay" an "additional restitution value."   R.C. 1533.99 does not address the "additional restitution value" mandated by R.C. 1531.201(C)(1).   Thus, R.C. 1533.99 does not appear to negate or conflict with R.C. 1531.201(C)(1).

{¶ 10} Generally, the interpretation of a statute involves a purely legal question.   Thus, an appellate court will conduct a de novo review of a trial court's judgment interpreting a statute and will afford no deference whatsoever to a trial court's interpretation.   *Oliver v. Johnson*, 4th Dist. Jackson No. 06CA16, 2007-Ohio-5880, ¶ 5.   We must first look to the plain language of the statute itself to determine the legislative intent.   *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 11.   We apply a statute as it is written when its meaning is unambiguous and definite. *Id.,* citing *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 52.   When a statute is subject to various interpretations, a court may invoke rules of statutory construction to arrive at legislative intent.   R.C. 1.49; *Cline v. Ohio Bur. of Motor Vehicles*, 61 Ohio St.3d 93, 573 N.E.2d 77 (1991); *Carter v. Youngstown*, 146 Ohio St. 203, 65 N.E.2d 63 (1946), paragraph one of the syllabus.

{¶ 11} In construing a statute, a court's paramount concern is the legislative body's intent in enacting the provision. *State ex rel. Russell v. Thornton*, 111 Ohio St.3d 409, 2006-Ohio-5858, 856 N.E.2d 966, ¶ 11. The court must look to the statute itself to determine legislative intent, and, if such intent is clearly expressed, the statute may not be restricted, constricted, qualified, narrowed, enlarged or abridged, and significance and effect should, if possible, be accorded to every word, phrase, sentence and part of an act. *State ex rel. McGraw v. Gorman*, 17 Ohio St.3d 147, 149, 478 N.E.2d 770 (1985). To determine legislative intent, a court must read words and phrases in context and construe them in accordance with the words of grammar and common usage. *Russell* at ¶ 11. In construing the terms of a particular statute, words must be given their usual, normal and customary meanings. *Proctor v. Kardassilaris*, 115 Ohio St.3d 71, 2007-Ohio-4838, 873 N.E.2d 872, ¶ 12. Moreover, related statutory provisions must be read in pari materia. *Maxfield v. Brooks*, 110 Ohio St. 566, 144 N.E. 725 (1924), paragraph two of the syllabus. In reading statutes in pari materia, courts must give a reasonable construction that provides the proper effect to each. All provisions bearing upon the same subject matter should be construed harmoniously, unless they are irreconcilable. *Couts v. Rose*, 152 Ohio St. 458, 90 N.E.2d 139 (1950); *Chesapeake Exploration, LLC v. Oil & Gas Comm.*, 135 Ohio St.3d 204, 2013-Ohio-224, 985 N.E.2d 480.

{¶ 12} Recently, the Supreme Court of Ohio decided *Risner v. Ohio Dept. of Natural Resources*, 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718. In *Risner,* the court considered whether ODNR has the authority to seek, pursuant to R.C. 1531.201(B), the recovery of the civil restitution value of an antlered white-tailed deer taken in violation of R.C. Chapter 1533 when ODNR had also seized parts of the deer as evidence during the criminal investigation, and those parts had been subsequently forfeited to ODNR in the criminal action. The court held that "reading the

statute as a whole, R.C. 1531.201 operates by its clear terms as follows: upon a conviction in violation of R.C. Chapter 1531 or 1533 or division rule involving a white-tailed deer with a gross score of more than 125 inches, ODNR is required to recover civil restitution from the offender, *see* R.C. 1531.201(C), and revoke the offender's hunting license until payment of the restitution value is made, *see* 1531.201(D). *ODNR has no discretion with respect to either civil restitution or revocation of the license.* In the event the offender does not pay the restitution value in order to regain the hunting license, R.C. 1531.201(B) permits ODNR to file a civil action to recover the civil restitution value even though ODNR had seized the deer meat and antlers as evidence in the criminal investigation and was awarded possession of that evidence as a result of a conviction for a violation of R.C. Chapter 1531 or 1533 or division rule." *Id.* at ¶ 19 (Emphasis added).

{¶ 13} The *Risner* court also stated "[i]t is evident from these excerpts that the legislative intent in enacting R.C. 1531.201 is to preserve Ohio's wildlife for legitimate hunters and naturalists and to provide a significant deterrent to those individuals who seek to harm the state's aesthetic, economic, and recreational interests." *Id. at* ¶ 23. "Therefore, we hold that R.C. 1531.201(C) mandates that ODNR recover the civil restitution value of an antlered white-tailed deer with a gross score of more than 125 inches from an offender who has been convicted of a violation of R.C. Chapter 1531 or 1533 or division rule. We further hold that R.C. 1531.201(B) permits ODNR to file a civil action to recover the civil restitution even though it had seized the deer's meat and antlers as evidence during the criminal investigation and was awarded possession of that evidence as a result of a conviction for a violation of R.C. Chapter 1531 or 1533 or division rule." *Id.* at ¶ 31.

{¶ 14} Thus, because *Risner* indicates that R.C. 1531.201(C) mandates that restitution is required pursuant to the statutory formula, whereas R.C. 1533.99 refers only to restitution "minimum

value[s]" as discretionary, we conclude that the trial court in the case sub judice correctly determined that the restitution value in R.C. 1531.201(C)(1) is mandatory. At this juncture, we also wish to emphasize that as an intermediate appellate court, we are obligated to follow all Ohio Supreme Court decisions, regardless of whether individual judges may personally agree with those decisions. The same holds true for enactments from the Ohio General Assembly. Although individual members of this court may view the amount of mandated restitution in this case as excessive, we do not possess the authority to reach a contrary result.

{¶ 15} In addition to the statutory construction argument, appellant also contends that he received ineffective assistance of counsel because counsel failed to provide the trial court with the legal authority within R.C. 1533.99(G) and R.C. 2929.28(B) to advocate that the trial court did have discretion over restitution.

{¶ 16} In *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, the United States Supreme Court set forth the standard for judging ineffective-assistance claims. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Further, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. *See also State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

{¶ 17} The Supreme Court of Ohio instructed in *State v. Sanders*, 94 Ohio St.3d 150, 2002-Ohio-350, 761 N.E.2d 18, "*Strickland* charges us to '[apply] a heavy measure of deference to

counsel's judgments,' 466 U.S. at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 695, and to 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' *id*. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. * * * [W]e note that courts must 'judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.' *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695." *Sanders* at ¶ 3-5. Reversal of a conviction for ineffective assistance of counsel requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 205. To establish prejudice, an appellant must show a reasonable probability exists that, but for the alleged errors, the result of the proceeding would have been different. *State v. Conway* (2006), 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95, citing *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 143, 538 N.E.2d 373. In the case at bar, we believe, as we pointed out above, that the trial court properly ordered the mandated restitution in accordance with R.C. 1531.201(C). Thus, we do not agree with appellant's assertion that he received ineffective assistance from his trial counsel.

{¶ 18} Appellant further argues that the trial court failed to consider his ability to pay restitution. R.C. 2929.28(B) sets forth the types of financial sanctions that may be ordered in misdemeanor cases, including, inter alia, monetary fines, cost of confinement and restitution. The statute also provides that a court may determine an offender's ability to pay a financial sanction, and can consider imposing a community service sanction in lieu of a financial sanction. However, in view of the mandatory nature of the restitution sanction in the instant case, the trial court had no

obligation to consider appellant's ability to pay the ordered amount of restitution.   Nonetheless, we note that the trial court did consider appellant's ability to pay and the record in this case so demonstrates.   The October 6, 2016 entry regarding the R.C. 1533.11 violation indicated that appellant is able to pay the financial sanctions/costs, and indicated a payment plan.   The October 6, 2016 entry regarding the R.C. 1533.10 violation indicated similarly that appellant was able to pay the financial sanctions/costs and noted a payment plan, and also noted a monthly income of $365-$500 and that appellant is residing with his father.   Thus, the record in this case demonstrates that the trial court did, in fact, consider appellant's ability to pay.   *See State v. Daniels*, 1st Dist. Hamilton No. C-150042, 2015-Ohio-5348, ¶ 39-40.   Once again, we believe that appellant has not persuaded this court that his counsel provided him ineffective assistance of counsel.

{¶ 19} Accordingly, based upon the foregoing reasons, we overrule appellant's assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment is affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallipolis Municipal Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted.   The purpose of said stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.   The stay as herein continued will terminate at the expiration of the sixty-day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Supreme Court of Ohio in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.   Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & McFarland, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.