[Cite as *State v. Brown*, 2018-Ohio-2635.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee, | : | Case No. 17CA3809 |
| v. | : | |
| | | DECISION AND |
| CHARLES BROWN, | : | JUDGMENT ENTRY |
| Defendant-Appellant. | : | RELEASED 07/03/2018 |

_____

APPEARANCES:

Matthew F. Loesch, Portsmouth, Ohio, for appellant.

Mark E. Kuhn, Scioto County Prosecuting Attorney, and Joe Hale, Scioto County Assistant Prosecuting Attorney, Portsmouth, Ohio, for appellee.

_____

Hoover, P.J.

{¶1}   Defendant-appellant, Charles J. Brown ("Brown"), appeals the judgment of the Scioto County Court of Common Pleas, which sustained the State's Motion to Retain Jurisdiction and ordered that Brown be confined to the Appalachian Behavioral Healthcare facility in Athens, Ohio, until further order of the court. On appeal, Brown contends that the trial court erred in sustaining the State's motion pursuant to R.C. 2945.39(A)(2) because the trial court failed to accomplish the hearing and decision within the time period prescribed by R.C. 2945.38(C). Brown also claims that the trial court's decision was not supported by clear and convincing evidence. Conversely, the State argues that the trial court was properly vested with jurisdiction to hold the hearing and issue a decision; and that there is sufficient evidence in the record to support the trial court's decision.

{¶2}    For the following reasons, we find that (1) the trial court was properly vested with jurisdiction to hold a hearing on the State's motion and to issue its decision to retain jurisdiction; and (2) the trial court's findings were supported by clear and convincing evidence. Accordingly, we affirm the judgment of the trial court.

## I. Facts and Procedural History

{¶3}    On July 12, 2015, New Boston Police Officer Matthew Richardson ("Officer Richardson"), witnessed Brown trying to break in the back door of the former Eagles building. Brown tried to hold himself out as the owner of the building; however, Officer Richardson was familiar with Brown from having prior contact with him; and he knew that Brown was not the owner. As a result, Officer Richardson placed Brown under arrest and transported him to the New Boston Police Department for booking. Brown was placed in a temporary holding cell while the paperwork was completed. After the booking process, Officer Richardson released Brown from the holding cell and prepared to transport him to the Scioto County Jail. Brown was polite and cooperative throughout this process.

{¶4}    After advising Brown of the charges—Breaking and Entering and Possession of Criminal Tools—Officer Richardson informed Brown that he would not receive his tools back. Brown reacted by becoming enraged and striking Officer Richardson on the nose. Brown rushed toward the door but only made it a few steps before Officer Richardson tased him. This caused Brown to immediately drop to his knees. Fellow New Boston Police Officer Wesley Jordan ("Officer Jordan") then helped secure Brown. After Brown was secured, Officer Richardson was taken to the hospital where he was diagnosed with a fractured nose. Officer Richardson was discharged from the hospital that same day, and he returned to work after "a couple days."

{¶5}    In July 2015, the Scioto County Grand Jury issued a five-count indictment charging Brown with Count 1: Felonious Assault of a Peace Officer, in violation of R.C. 2903.11, a felony of the first degree; Count 2: Breaking and Entering, in violation of R.C. 2911.13, a felony of the fifth degree; Count 3: Possession of Criminal Tools, in violation of R.C. 2923.24, a felony of the fifth degree; Count 4: Assault, in violation of R.C. 2903.13, a felony of the fourth degree; and Count 5: Escape, in violation of R.C. 2921.34, a felony of the third degree. Brown was arraigned on the charges in August 2015; and he entered not guilty pleas and was appointed counsel. Then, later that same month, Brown's counsel filed a motion for a competency evaluation, which the trial court granted.

{¶6}    In January 2016, based on the stipulation of the State and Brown's counsel that Brown was not competent to stand trial, and based on the psychological evaluation and written report of Emily Davis, Psy.D., the trial court found that Brown was not competent to stand trial. The trial court further relied upon the psychological evaluation, when it found that Brown's competency could be restored within the time allowed by law, given the proper course of treatment. Therefore, the trial court ordered that Brown be committed to the custody of Summit Behavioral Health until such time that he would be competent to stand trial or until the allowable time by law for hospitalization was reached.

{¶7}    In September 2016, Summit Behavioral Health contacted the trial court because Brown was refusing to take his required medications. A hearing to address this issue was scheduled to take place in November 2016. Prior to this hearing, Brown's appointed counsel withdrew; and new counsel was appointed. The November hearing was then rescheduled as a status conference to take place in February 2017. This hearing was again continued and rescheduled for March 2017.

{¶8}    Thereafter, the trial court set an oral hearing for April 6, 2017. Prior to the oral hearing, Brown's counsel filed a Motion for Release pursuant to R.C. 2945.38. Consequently, the hearing was continued; and on April 14, 2017, the State filed a Motion to Retain Jurisdiction over Brown pursuant to R.C. 2945.39.

{¶9}    A hearing was scheduled for May 2017; but the trial court's docket did not indicate whether the hearing was on Brown's Motion for Release or the State's Motion to Retain Jurisdiction. The hearing was cancelled and rescheduled for June 2017; then it was rescheduled again for July 13, 2017.

{¶10}   On July 13, 2017, the trial court held a hearing on the State's Motion to Retain Jurisdiction.[1] Pursuant to R.C. 2945.39, the issues before the trial court were as follows: (1) whether or not the offense was committed, and (2) whether Brown's mental capacity is such that he is a mentally ill person subject to court order. During the hearing, the State presented the testimony of three witnesses: Officer Richardson, Officer Jordan, and New Boston Police Dispatcher Rebecca Phipps ("Dispatcher Phipps"). Dispatcher Phipps and Officer Jordan both corroborated Officer Richardson's account of the events in question. Counsel for Brown did not present any case or argument in response.

{¶11}   As to the first issue, the trial court found that the State had, by clear and convincing evidence, proven the allegations as to Count 1: Felonious Assault of a Peace Officer, Count 3: Possession of Criminal Tools, Count 4: Assault, and Count 5: Escape. In regards to Count 2: Breaking and Entering, the trial court found that Brown had committed Attempted

---

[1] We note that the trial court did not rule upon Brown's Motion for Release. "Nevertheless, when a trial court fails to rule upon a pretrial motion, it may be presumed that the court overruled it." *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.,* 69 Ohio St.3d 217, 223, 631 N.E.2d 150, 155 (1994), citing *Newman v. Al Castrucci Ford Sales, Inc.,* 54 Ohio App.3d 166, 561 N.E.2d 1001 (1988). Additionally, Brown's motion was implicitly denied when the trial court granted the State's Motion to Retain Jurisdiction.

Breaking and Entering, a first degree misdemeanor. The trial court also found that Count 1:

Felonious Assault of a Peace Officer and Count 4: Assault were allied offenses.

{¶12}  With respect to the second issue, the trial court found by clear and convincing

evidence that Brown is a mentally ill person subject to court order and institutionalization by the

court. Accordingly, the trial court sustained the State's Motion to Retain Jurisdiction and ordered

that Brown be confined at the Appalachian Behavioral Healthcare facility in Athens, Ohio, until

further order of the court.

{¶13}  Brown timely appealed the trial court's order.

## II. Assignments of Error

{¶14}  Brown assigns the following errors for our review:

Assignment of Error I:

> The hearing and decision to maintain jurisdiction over the Appellant following his
> being declared not competent to stand trial was not accomplished within the time
> period prescribed by Ohio Revised Code 2945.38(C).

Assignment of Error II:

> The Trial Court's findings that Appellant had committed the offense(s) for which
> he was charged and subsequent decision to maintain jurisdiction pursuant to ORC
> 2945.39(A)(2) was not supported by clear and convincing evidence.

## III. Law and Analysis

### A. The Relevant Time Requirement in R.C. 2945.38 Is Directory, Not Mandatory

{¶15} In his first assignment of error, Brown contends that the trial court erred in

sustaining the State's motion pursuant to R.C. 2945.39(A)(2) because the trial court failed to

accomplish the hearing and decision within the time period prescribed by R.C. 2945.38(C).

Review of this assignment of error centers upon whether the trial court correctly interpreted the

statutes. The correct interpretation of statutes presents a question of law that we review

independently and without deference to the trial court. *E.g., State v. Vanzandt*, 142 Ohio St.3d 223, 2015-Ohio-236, 28 N.E.3d 1267, ¶ 6; *State v. Bundy,* 2012-Ohio-3934, 974 N.E.2d 139, ¶ 46 (4th Dist.); *see also Hudson v. Petrosurance, Inc.,* 127 Ohio St.3d 54, 2010-Ohio-4505, 936 N.E.2d 481, ¶ 29, citing *MCI Telecommunications Corp. v. Pub. Util. Comm.,* 38 Ohio St.3d 266, 268, 527 N.E.2d 777 (1988) (stating that appellate courts have "complete and independent power of review as to all questions of law").

{¶16} " 'It is a cardinal rule of statutory construction that where the terms of a statute are clear and unambiguous, the statute should be applied without interpretation.' " *Wilson v. Lawrence*, 150 Ohio St.3d 368, 2017-Ohio-1410, 81 N.E.3d 1242, ¶ 11, quoting *Wingate v. Hordge,* 60 Ohio St.2d 55, 58, 396 N.E.2d 770 (1979), citing *Provident Bank v. Wood,* 36 Ohio St.2d 101, 304 N.E.2d 378 (1973). Accordingly, a court's first step when considering the meaning of a statute "is always to determine whether the statute is 'plain and unambiguous.' " *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, 75 N.E.3d 203, quoting *State v. Hurd,* 89 Ohio St.3d 616, 618, 734 N.E.2d 365 (2000). Importantly, however, related provisions must be read in *pari materia. State ex rel. Cordray v. Midway Motor Sales, Inc.*, 122 Ohio St.3d 234, 2009-Ohio-2610, 910 N.E.2d 432, ¶ 25, citing *Maxfield v. Brooks,* 110 Ohio St. 566, 144 N.E. 725 (1924), paragraph two of the syllabus. In reading statutes in *pari materia,*"court[s] must give a reasonable construction that provides the proper effect to each * * *." *Id.* "All provisions * * * bearing upon the same subject matter should be construed harmoniously unless they are irreconcilable." *Id.,* citing *Couts v. Rose,* 152 Ohio St. 458, 461, 90 N.E.2d 139 (1950).

{¶17} In the case sub judice, the trial court found Brown incompetent to stand trial on January 15, 2016. Pursuant to R.C. 2945.38, the trial court ordered that Brown be committed to

the custody of Summit Behavioral Health, where he began treatment on January 22, 2016.

Section 2945.38(B) of the Revised Code states, in relevant part, that:

> If, after taking into consideration all relevant reports, information, and other evidence, the court finds that the defendant is incompetent to stand trial and that there is a substantial probability that the defendant will become competent to stand trial within one year if the defendant is provided with a course of treatment, the court shall order the defendant to undergo treatment. * * *

R.C. 2945.38(B)(1)(a).

{¶18} The trial court ordered that Brown undergo treatment until such time that he was restored to competency or until the allowable time by law for hospitalization was reached. Because Brown was charged with Felonious Assualt of a Peace Officer, a felony of the first degree, R.C. 2945.38(C)(1)(b) applies, and provides as follows:

> (C) No defendant shall be required to undergo treatment, including any continuing evaluation and treatment, under division (B)(1) of this section for longer than whichever of the following periods is applicable:
>
> (1) One year, if the most serious offense with which the defendant is charged is one of the following offenses:
>
> * * *
>
> (b) An offense of violence that is a felony of the first or second degree[.]

{¶19} After the expiration of the maximum time for treatment as specified in division (C), Section 2945.38(H) of the Revised Code provides as follows:

> (H) If a defendant is committed pursuant to division (B)(1) of this section, within ten days after the treating physician of the defendant or the examiner of the defendant who is employed or retained by the treating facility advises that there is not a substantial probability that the defendant will become capable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense even if the defendant is provided with a course of treatment, *within ten days after the expiration of the maximum time for treatment as specified in division (C) of this section*, within ten days after the expiration of the maximum time for continuing evaluation and treatment as specified in division (B)(1)(a) of this section, within thirty days after a defendant's request for a hearing that is made after six months of treatment, or

within thirty days after being advised by the treating physician or examiner that the defendant is competent to stand trial, whichever is the earliest, *the court shall conduct another hearing to determine if the defendant is competent to stand trial and shall do whichever of the following is applicable*:

* * *

(3) If the court finds that the defendant is incompetent to stand trial, if the defendant is charged with an offense listed in division (C)(1) of this section, and if the court finds that there is not a substantial probability that the defendant will become competent to stand trial even if the defendant is provided with a course of treatment, or if the maximum time for treatment relative to that offense as specified in division (C) of this section has expired, *further proceedings shall be as provided in sections 2945.39,* 2945.401, and 2945.402 *of the Revised Code*.

(Emphasis added.)

{¶20}   Here, the one-year maximum for Brown's treatment expired on January 22, 2017. The trial court did not hold a hearing on the State's Motion to Retain Jurisdiction until July 13, 2017. Because the trial court failed to hold a hearing and enter its decision to retain jurisdiction within the time period prescribed in R.C. 2945.38(C), Brown contends that he should be discharged from treatment.

{¶21}   However, if the one-year time period is exceeded, discharge is not set forth as a remedy in the language of R.C. 2945.37, R.C. 2945.38, or R.C. 2945.39. Rather, the statutes provide for further proceedings upon the expiration of the maximum time for treatment of incompetency. According to Section 2945.39 of the Revised Code:

(A) If a defendant who is charged with an offense described in division (C)(1) of section 2945.38 of the Revised Code is found incompetent to stand trial, after the expiration of the maximum time for treatment as specified in division (C) of that section or after the court finds that there is not a substantial probability that the defendant will become competent to stand trial even if the defendant is provided with a course of treatment, one of the following applies:

(1) The court or the prosecutor may file an affidavit in probate court for civil commitment of the defendant in the manner provided in Chapter 5122 or 5123 of the Revised Code. * * *

(2) On the motion of the prosecutor or on its own motion, the court may retain jurisdiction over the defendant if, at a hearing, the court finds both of the following by clear and convincing evidence:

(a) The defendant committed the offense with which the defendant is charged.

(b) The defendant is a mentally ill person subject to court order or a person with an intellectual disability subject to institutionalization by court order.

{¶22}   Further, Section 2945.401 of the Revised Code states that:

(J)(1) A defendant or person who has been committed pursuant to section 2945.39 or 2945.40 of the Revised Code continues to be under the jurisdiction of the trial court until the final termination of the commitment. For purposes of division (J) of this section, the final termination of a commitment occurs upon the earlier of one of the following:

(a) The defendant or person no longer is a mentally ill person subject to court order or a person with an intellectual disability subject to institutionalization by court order, as determined by the trial court;

(b) The expiration of the maximum prison term or term of imprisonment that the defendant or person could have received if the defendant or person had been convicted of the most serious offense with which the defendant or person is charged or in relation to which the defendant or person was found not guilty by reason of insanity;

(c) The trial court enters an order terminating the commitment * * *.

{¶23} In some instances, despite having "shall" as the operative verb, the time period prescribed in a statute may be directory.

"*Construction of Particular Language*. As a general rule the word 'may,' when used in a statute, is permissive only and operates to confer discretion, while the words 'shall' and 'must' are imperative, operating to impose a duty which may be enforced. These words, however, are constantly used in statutes without regard to their literal meaning; and in each case are to be given that effect which is necessary to carry out the intention of the [l]egislature as determined by the ordinary rules of construction. Thus the word 'may' should be construed to be mandatory whenever the public or individuals have a claim *de jure* that the power conferred should be exercised, or whenever something is directed to be done for the sake of justice or the public good; but never for the purpose of creating a right. So the word 'shall' is to be construed as merely permissive where no public benefit or private right requires it to be given an imperative meaning. Even 'must' has been construed as merely directory, where, from a construction of the entire

statute and the object to be accomplished by it, such appears to have been the intention of the [l]egislature."

*State ex rel. Smith v. Barnell,* 109 Ohio St. 246, 256-257, 142 N.E. 611 (1924), quoting The Cyclopedia of Law and Procedure, 36 Cyc. 1160.

{¶24}The Ohio Supreme Court has found that, "[t]he character of the statute may be determined by the consideration of (1) the words of the statute, (2) the nature, context and object of the statute and (3) the consequences of the various constructions." *State ex rel. Jones v. Farrar*, 146 Ohio St. 467, 473, 66 N.E.2d 531 (1946). " 'As a general rule, a statute which provides a time for the performance of an official duty will be construed as directory so far as time for performance is concerned, especially where the statute fixes the time simply for convenience or orderly procedure.' " *In re Davis*, 84 Ohio St.3d 520, 522, 705 N.E.2d 1219 (1999), quoting *Farrar at* 472. "This is so 'unless the nature of the act to be performed or the phraseology of the statute or of other statutes relating to the same subject-matter is such that the designation of time must be considered a limitation upon the power of the officer.' " *Id.*, quoting *Barnell* at 255.

{¶25}  In *State v. Ferguson*, the Ninth District found that "although the trial court failed to hold a competency hearing within the guidelines set forth in [R.C. 2945.38], such guidelines were directory, not mandatory, and no due process violation divesting the trial court of jurisdiction resulted." *State v. Ferguson*, 9th Dist. Medina No. 2830-M, 1999 WL 459325, *7 (June 30, 1999). Other appellate courts have applied the same line of reasoning. *See City of Cleveland v. Tarver*, 8th Dist. Cuyahoga No. 105522, 2017-Ohio-1165, ¶ 6, fn. 1 (the time period for holding a hearing has been found to be directory rather than mandatory); *State v. McClelland*, 10th Dist. Franklin No. 07AP-253, 2007-Ohio-2660, ¶ 3 (the ten-day limit mandated in R.C. 2945.38(H) did not deprive the trial court of jurisdiction); *State v. Barker*, 2d

Dist. Montgomery No. 20417, 2005-Ohio-298, ¶ 27 (the five-day period for holding a hearing on a request for forcible medication under R.C. 2945.38(B)(1) is directory not mandatory).

{¶26} This Court has interpreted other competency and insanity statutes, which span R.C. 2945.37 to 2945.402, to be directory rather than mandatory. In *State v. Hilyard*, this Court found the time requirements in R.C. 2945.37 and R.C. 2945.371 were enacted "to guide the procedure of competency evaluations, not to divest courts of jurisdiction if those time limits are not met." *State v. Hilyard*, 4th Dist. Vinton No. 05CA598, 2005-Ohio-4957, ¶ 26, citing *Ferguson*. Having previously found *State v. Ferguson* persuasive with regards to R.C. 2945.37 and R.C. 2945.371, we now apply the same line of reasoning to R.C. 2945.38 and find the ten-day limit mandated in R.C. 2945.38(H) is directory not mandatory.

{¶27} Because we find that the ten-day requirement in Section 2945.38(H) of the Revised Code is directory and not mandatory, the trial court was properly vested with jurisdiction to hold a hearing on the State's motion and to issue its decision to retain jurisdiction. This Court acknowledges that Brown was held at Summit Behavioral Health in excess of the one-year treatment mandate in R.C. 2945.38(C)(1); but the State's failure to comply with the relevant statutory time frame does not rise to the level of violating Brown's due process rights. *See id.* at ¶ 34 (Harsha, J., concurring), citing *Montana v. Engelhoff*, 518 U.S. 37, 43, 116 S.Ct. 2013, 135 L.Ed.2d 261 (1996).

{¶28} Accordingly, Brown's first assignment of error is without merit and is overruled.

**B. The Trial Court's Decision Was Supported by Clear and Convincing Evidence**

{¶29} In his second assignment of error, Brown claims that the trial court's finding that he had committed the offenses in question and its decision to maintain jurisdiction pursuant to R.C. 2945.39(A)(2) were not supported by clear and convincing evidence. In particular, Brown

contests the trial court's finding that he committed the crime of Felonious Assault of a Peace Officer, a felony of the first degree, in violation of R.C. 2903.11. Brown argues that he lacked the requisite intent to cause serious physical harm and that Officer Richardson's fractured nose did not constitute serious physical harm. Thus, Brown asks this Court to overturn the trial court's finding and to remand the matter accordingly.

{¶30}  To retain jurisdiction over the defendant after the maximum time for treatment specified in R.C. 2945.38(C) expires, a trial court must find by clear and convincing evidence that: (1) the defendant committed the offense with which the defendant is charged; and (2) the defendant is a mentally ill person subject to court order or a person with an intellectual disability subject to institutionalization by court order. R.C. 2945.39(A)(2)(a) and (b). In determining whether to retain jurisdiction over the defendant, the court may consider "all relevant evidence, including, but not limited to, any relevant psychiatric, psychological, or medical testimony or reports, the acts constituting the offense charged, and any history of the defendant that is relevant to the defendant's ability to conform to the law." R.C. 2945.39(B). If the court fails to make both findings by clear and convincing evidence, and unless the court or prosecutor files an affidavit in probate court for civil commitment of the defendant pursuant to Chapter 5122 or 5123 of the Revised Code, the court must dismiss the indictment against the defendant. R.C. 2945.39(C).

{¶31}  Our court has described "clear and convincing evidence" as follows:

"Clear and convincing evidence" is evidence that will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. See, *Eppinger,* supra, at 163; *Cross v. Ledford* (1954), 161 Ohio St. 469, paragraph three of the syllabus. " 'It does not mean clear and unequivocal.' " *Eppinger,* at 164, quoting *Cross,* at 477. The clear and convincing evidence standard is considered a higher degree of proof than a mere "preponderance of the evidence," the standard generally utilized in civil cases. However, it is less stringent than the "beyond a reasonable doubt" standard used in criminal trials. See, *State v. Schiebel* (1990), 55 Ohio St.3d 71, 74; *Cross,* at 477. When reviewing whether "clear and convincing evidence" supports the trial

> court's decision, we must examine the record and ascertain whether sufficient evidence exists to meet this burden of proof. See, *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 368. This type of review is deferential to the trial court, and we must affirm the court's judgment if the record contains some competent, credible evidence to support it. See, *Schiebel,* at 74, and *State v. Longnecker,* Washington App. No. 02CA76, 2003–Ohio–6208, at ¶ 23. In reviewing the court's decision, we are not permitted to substitute our judgment for that of the trial court. See, *Longnecker*, supra; *State v. Waulk,* Ross App. No. 05CA2847, 2006–Ohio–929, at ¶ 12.

*State v. Offenberger*, 4th Dist. Washington No. 06CA22, 2007-Ohio-2551, ¶¶ 11-12.

{¶32}  Here, the trial court found by clear and convincing evidence that Brown committed the offenses for which he was charged in the indictment, including Count 1: Felonious Assault of a Peace Officer. The trial court also found that Brown is a mentally ill person subject to court order or a person with an intellectual disability subject to institutionalization by court order. However, since Brown only contests the trial court's finding that he committed the crime of Felonious Assault of a Peace Officer, we limit our review to whether the trial court had sufficient evidence of felonious assault before it.

{¶33}  Felonious assault occurs when a person knowingly causes serious physical harm to another. R.C. 2903.11(A)(1). If the victim is a peace officer or an investigator of the bureau of criminal identification and investigation, felonious assault is a felony of the first degree. R.C. 2903.11(D)(1)(a).

{¶34}  "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. * * *." R.C. 2901.22(B). The test for determining whether a defendant acted knowingly is a subjective one, based on the knowledge, beliefs, and circumstances of the

individual defendant. *State v. Elliott*, 104 Ohio App.3d 812, 821, 663 N.E.2d 412 (10th

Dist.1995).

> {¶35} R.C. 2901.01(A)(5) defines "serious physical harm" as any of the following:
>
> (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
>
> (b) Any physical harm that carries a substantial risk of death;
>
> (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
>
> (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
>
> (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5).

{¶36} One of our sister appellate courts addressed the issue of mens rea with respect to

felonious assault in *State v. McFadden*, 10th Dist. Franklin No. 95APA03-384, 1995 WL 694481

(Nov. 21, 1995). In *McFadden*, the defendant threw one blind-side punch to the victim's head.

The Tenth District found the defendant acted recklessly, not knowingly. According to the

appellate court, it was "difficult to accept that a reasonably prudent person would have been

aware that the throwing of one punch had the propensity to cause serious physical harm to

another person." *Id.* at *4.

{¶37} In contrast, in *State v. Shepherd,* 11th Dist. Ashtabula No.2003-A-0028, 2006-

Ohio-4315, ¶ 28, the Eleventh District held that one punch to the face, resulting in serious

injuries to the victim, could support a conviction for felonious assault. In that case, the

defendant, a jail inmate, struck a corrections officer with enough force to crack two of her teeth.

The court held the evidence was sufficient to support a conviction for felonious assault. *Id.* at ¶ 32.

{¶38}  In *State v. Browning*, this Court found that two deputies sustained "severe physical harm" under R.C. 2901.01(A)(5)(c) and (e) after the defendant threw bleach in their faces. *State v. Browning*, 190 Ohio App.3d 400, 2010-Ohio-5417, 942 N.E.2d 394, ¶ 38 (4th Dist.). One deputy related on direct examination that "after they went outside to flush their eyes, they had to return to the camper 'with limited vision' to arrest appellant." *Id.* at ¶ 39. We found that "[d]iminished vision is a 'substantial incapacity' for deputies who, having already suffered an assault, must return to the camper and arrest their assailant." *Id.* Based on a physician's testimony, this court also found that the bleach caused "prolonged or intractable pain."

{¶39}  In the instant case, Officer Richardson describes the incident and his resulting injury on direct examination:

> Q. Okay. Go ahead and tell the Court what happened as you were taking him out of the holding cell?
>
> A. I uh, like I said I removed him from the holding cell, advised him of his charges, which he stated that he understood and when I advised him that he was not getting his tools back, became outraged, he uh—he was swearing constantly and everything. When I turned to sign some paperwork he raised his fist and when I looked up he clocked me in the nose.
>
> Q. Okay. Tell the Court what kind of injuries you sustained from that?
>
> A. Uh, at that point in time my vision got blurred, really blurred, it broke my glasses at the time, my nose was gushing blood and I observed a slight bl—a slight blur of Mr. Brown trying to escape the building. I then deployed my taser and I hit Mr. Brown in the back drawling [sic] him to the ground.
>
> Q. Did you require medical treatment?
>
> A. Yes, I did. I was transported to SOMC—
>
> Q. You were transported?

A. Yes

Q. Okay. Go ahead.

A. The paramedics that arrived stated that I had a possible broken nose at the time, that was from their perspective.

Q. Okay. And what was the diagnoses? [sic]

A. It just a fra—it was just a bad fracture and it didn't actually be broken, [sic] just a bad fracture.

{¶40}   Here, we find that the trial court had sufficient evidence before it to establish a firm belief that: (1) Brown caused serious physical harm to Officer Richardson, and (2) Brown possessed the requisite intent to cause such serious physical harm.

{¶41}   With respect to the serious physical harm element, we find that the facts of this case are similar to those in *Browning*. In *Browning*, two peace officers sustained severe physical harm under R.C. 2901.01(A)(5)(c) when their assailant threw bleach on their faces. Diminished vision was a "temporary, substantial incapacity" for the deputies who, after being assaulted, had to arrest their assailant. Here, Brown "clocked" Officer Richardson once in the nose. Although Officer Richardson testified that his nose "didn't actually be broken [sic]," he also testified that it was a "bad fracture." Merriam-Webster defines a "fracture" as "the act or process of breaking or the state of being broken; *especially*: the breaking of hard tissue (such as bone)." According to Officer Richardson's testimony, the injury caused "[his] vision [to get] blurred, really blurred," which in turn affected his ability to secure Brown.  Because the record contains some competent and credible evidence, we find that the trial court had sufficient evidence before it to establish a firm belief that Brown caused serious physical harm to Officer Richardson.

{¶42}   With regards to the mens rea element, we find the reasoning in the *Shepherd* case to be more persuasive than the *McFadden* case. In *Shepherd*, a single punch to the face, which

resulted in serious injuries to the victim, supported a conviction for felonious assault with the peace officer specification. Unlike in *McFadden*, the *Shepherd* court found that a reasonably prudent person is aware that one punch has the propensity to cause serious physical harm. Although Brown was found incompetent to stand trial, his actions suggest that he was aware that his conduct would probably cause serious physical harm. After "clocking" Officer Richardson in the nose, Brown then "attempted to flee." A court could reasonably interpret these actions to suggest that Brown was aware that the punch would probably incapacitate the officer and give Brown the opportunity to flee the facility. Because the circumstances constitute some competent and credible evidence, we find that the trial court had sufficient evidence before it to establish a firm belief that Brown possessed the requisite intent to cause serious physical harm to Officer Richardson.

{¶43} Because competent and credible evidence supports the trial court's factual findings on both elements of felonious assault, we refuse to substitute our judgment for that of the trial court. Instead, we find that the trial court's finding that Brown committed Felonious Assault of a Peace Officer, in violation of R.C. 2903.11(A)(1) and (D)(1)(a), was supported by clear and convincing evidence. Accordingly, the trial court's decision to maintain jurisdiction pursuant to R.C. 2945.39(A)(2) was also supported by clear and convincing evidence.

{¶44} Accordingly, Brown's second assignment of error is without merit and is overruled.

### IV. Conclusion

{¶45} Having overruled both assignments of error, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellee to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellee to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. and Abele, J.: Concur in Judgment and Opinion.

For the Court,

By: _____
      Marie Hoover, Presiding Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**